**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____
                                :
CANCER GENETICS, INC.,          :
                                :
                   Plaintiff,   :  Civil Case No. 07-5463 (FSH)
                                :
         v.                     :  ORDER and OPINION
                                :
PETER HARTMAYER, et al.,        :  Date: February 4, 2008
                                :
                                :
                   Defendants.  :
_____ :
```

**HOCHBERG, District Judge**

This matter is before the Court upon Plaintiff Cancer Genetics, Inc.'s ("CGI")

Application for an Order to Show Cause why a Preliminary Injunction with Temporary Restraints

Should not be Entered Against Defendants and upon Defendant Hartmayer's Motion to Dismiss

pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff CGI seeks a Preliminary Injunction with Temporary Restraints to enjoin

Defendant Hartmayer from (1) making disparaging comments about Plaintiff to Plaintiff's

customers and others; (2) soliciting Plaintiff's current, former, and known prospective

employees; (3) soliciting current, former, and known prospective customers of CGI; (4) engaging

in sales and marketing on behalf of Plaintiff's competitor; (5) disclosing Plaintiff's trade secrets

and proprietary information.  See Memorandum in Support of Plaintiff's Application for an

Order to Show Cause why a Preliminary Injunction with Temporary Restraints Should not be

Entered Against Defendants ("Pl. App.") at 1.

1

Defendant moves to dismiss those parts of Counts Three (common law unfair competition), Seven (misappropriation of a trade secret), Thirteen (breach of covenant of good faith and fair dealing), and Plaintiff's request for injunctive relief that rely in part on the enforceability of a restrictive covenant contained in CGI's Code of Business and Ethics ("Code" or "the Code").  Count Twelve (breach of contract) relies entirely on the enforceability of the Code's restrictive covenant and Defendant moves to dismiss that claim in its entirety.  Defendant also moves to dismiss or stay all counts pending a determination of the validity of the Employment Agreement between CGI and Defendant Hartmayer.[1]  Finally, Defendant moves to dismiss Plaintiff's unfair competition claims: Counts One (Lanham Act), Three (common law unfair competition), and Five (New Jersey statutory unfair competition claim).  The Court has considered the arguments of the parties on the papers pursuant to Federal Rule of Civil Procedure 78.

## I. BACKGROUND

In 1999, Defendant Hartmayer helped to found Plaintiff CGI.  See First Amended Verified Complaint ("Compl.") ¶ 18.  Hartmayer joined CGI as Vice President of Sales and Marketing and a member of CGI's Board of Directors.  Id. ¶ 19.  Plaintiff alleges that Defendant Hartmayer

> was responsible for sales of the Company's [diagnostic] Probes, as well as its
> clinical diagnostic sales and, when the Company was located in Massachusetts,

---

[1]      Defendant moves to dismiss or stay all counts against him – Counts One (Lanham Act claim), Three (common law unfair competition), Five (New Jersey statutory unfair competition claim), Seven (misappropriation of a trade secret), Nine (tortious interference with a prospective economic advantage), Fourteen (breach of loyalty), Fifteen (product disparagement), and Sixteen (conversion) – pending a determination of the validity of the Employment Agreement.

2

was primarily responsible for establishing CGI's first clinical diagnostic laboratory, overseeing all aspects of billing, and interfacing with clients.

Compl. ¶ 20.  Hartmayer was and continues to be a minority shareholder of CGI, holding approximately 10% of its outstanding shares.  See Declaration of Louis J. Maione ("Maione Decl.") ¶ 4; Declaration of Peter D. Hartmayer ("Hartmayer Decl.") ¶ 11.

At some time in 2002, the parties agree that Defendant Hartmayer was asked by CGI's then-president to sign an Employment Agreement, which contained a restrictive covenant.  See Hartmayer Decl. ¶ 14 (alleging that Hartmayer was asked "sometime in 2002"); see also Maione Decl. ¶ 6 (alleging that Hartmayer was asked on or around June 4, 2002).  The parties also agree that the Employment Agreement presented to Defendant Hartmayer contained the following language:

> the Employee shall not, directly or indirectly, (I) be an owner, partner, shareholder, director, consultant, agent, employee or co-venturer, (ii) invest, engage or participate in or (iii) prepare to be or do any of the foregoing . . . in or with respect to any Competing Business located within the Commonwealth of Massachusetts, the rest of the United States or anywhere else in the world.

See Maione Decl. Ex. A (Employment Agreement) at 3; see also Defendant Peter D. Hartmayer's Brief in Opposition to Plaintiff's Application for a Preliminary Injunction with Temporary Restraints ("Hartmayer Br.") at 7.

The parties differ on the remaining – and for purposes of this Application, crucial – details.  Defendant Hartmayer denies that he ever signed the Agreement.  See Hartmayer Decl. ¶ 14.  Louis Maione, CGI's current CEO, avers without firsthand knowledge that Defendant Hartmayer executed the Employment Agreement.  See Maione Decl. ¶ 6 ("Prior to my employment at CGI, I became aware that Mr. Hartmayer entered into an Employment Agreement with CGI on or before June 4, 2002.").  Importantly for purposes of this Application, however,

3

Plaintiff does not have a copy of an executed Employment Agreement with Defendant

Hartmayer's signature.  See Pl. App. at 3.  Plaintiff instead relies on circumstantial evidence that

Plaintiff believes gives rise to an implication that Defendant Hartmayer executed the Agreement.

See Maione Decl. ¶¶ 7-14.

Both parties also agree that on March 19, 2007, Hartmayer signed the CGI Code of

Business and Ethics.  See Hartmayer Decl. ¶ 19; Maione Decl. ¶ 17.  The Code contains the

following language:

> those employees which the Company considers to be in possession of information,
> technologies, trade secrets and the like, are subject to certain restrictions, and,
> therefore, for a period of one (1) year from separation of employment, no officer,
> laboratory director, or manager shall accept employment from any other entity
> which competes directly or indirectly with the Company . . . .

Maione Decl. Ex. H, Part XIV.  This provision notwithstanding, however, the Code also

expressly provides that it  "does not in any way constitute an employment contract or assurance

of continued employment and does not create any rights in any employee, director, shareholder,

or other person or entity."  See Maione Decl. Ex. H at 1-2.  Just above the signature line the Code

also states that "I further understand that violations of this statement are cause for termination of

employment, or any agreement or contract with [CGI]."  See id. at 9.

The parties differ on the significance of the Code's disclaimer.  Plaintiff argues that the

Code is valid and enforceable as a restrictive covenant and that it bars Defendant Hartmayer from

working for his current employer, NeoDiagnostix ("NDI").  See Pl. App. at 15.  Defendant

Hartmayer argues that the above-cited language expressly disclaims that it creates any rights or

obligations in CGI and that, at most, "a violation of [the Code's] terms could lead to termination

of employment, which was, in any event, an at-will relationship . . . ."  See Hartmayer Br. at 17.

In August 2007, Defendant Hartmayer began discussing employment opportunities with Defendant NDI.  See Hartmayer Decl. ¶ 23.  Defendant Hartmayer resigned as an employee of CGI effective September 4, 2007.  See Maione Decl. ¶ 26; see also Pl. App. Ex. K (Defendant Hartmayer's letter of resignation).  Defendant Hartmayer remained on CGI's Board of Directors until he resigned in a letter dated October 13, 2007.  See Maione Decl. ¶ 26. Following his resignation as a CGI employee, Hartmayer entered into a consulting agreement with NDI.  See Hartmayer Decl. ¶ 35.

Plaintiff argues that Hartmayer's relationship with NDI is in violation of the Employment Agreement and CGI's Code of Business and Ethics.  Plaintiff also alleges that Defendant Hartmayer attempted to solicit potential CGI employees to work at NDI, see Compl. ¶ 42; disparaged CGI products to a potential CGI investor, see Compl. ¶ 47; trespassed on CGI's property and stole files and records, see Compl. ¶ 60; attempted to lure CGI customers to NDI, see Compl. ¶ 66; and disclosed trade secrets to CGI's competitors, see Compl. ¶ 86.

## II. STANDARD

### A. Injunctive Relief

"Preliminary injunctive relief is 'an extraordinary remedy' that 'should be granted only in limited circumstances.'"  AMG Nat. Trust Bank v. Ries, No. 06-4337, 2007 WL 2713218, *6 (E.D. Pa. Sept. 13, 2007) (quoting KOS Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004)).  Plaintiff bears the burden to "show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief."  Id. (citing Rogers v. Corbett, 468 F.3d 188, 192 (3d Cir. 2006)).  Further, "[w]hile

all four factors are important, failure to show either likelihood of success on the merits or irreparable harm 'must necessarily result in denial of a preliminary injunction.'" Id. (quoting In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir. 1982)).

### B. Motion to Dismiss

In a motion to dismiss "[w]e are required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to the plaintiff." Haspel v. State Farm Mut. Auto. Ins. Co., 241 Fed. App'x 837, 839 (3d Cir. 2007). The Court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir.1984)).

### III. DISCUSSION

### A. Plaintiff's Prayer for Injunctive Relief

#### 1. Likelihood of Success on the Merits

Plaintiff's argument that it will likely succeed on the merits is premised on the existence and enforceability of the two restrictive covenants it believes binds Defendant Hartmayer.[2] See Pl. App. at 7 ("Mr. Hartmayer's blatant disregard and breach of the restrictive covenants in the Employment Agreement and the CGI Code entitle him to a preliminary injunction.").  The Court

---

[2]    Plaintiff does not argue that its claims based upon alleged common law business torts and statutory unfair competition support its application for preliminary injunctive relief, and thus these claims are not further addressed in this section.

6

will therefore begin its analysis of Plaintiff's request for injunctive relief by examining Plaintiff's evidence regarding the existence and enforceability of the Employment Agreement and CGI's Code of Business and Ethics.

### a. The Employment Agreement

Plaintiff's attempt to demonstrate the existence of the Employment Agreement falls short of that required for the "extraordinary remedy" of injunctive relief.  The burden to demonstrate the existence of the document lies with Plaintiff.  See P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC., 428 F.3d 504, 508 (3d Cir. 2005) ("The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate.").  As noted above, however, Plaintiff concedes that it does not have an executed copy of the Employment Agreement.  See Pl. App. at 3.  Nor does Plaintiff proffer an affidavit of a percipient witness attesting first hand knowledge that Defendant Hartmayer signed the agreement.[3]

Plaintiff attempts to demonstrate the existence of the Employment Agreement by inference.  Plaintiff CGI relies primarily on an affidavit from CGI CEO Louis Maione pointing to two checks totaling $20,000 issued to Defendant Hartmayer on June 4, 2002.  See Pl. App. at 14; Maione Decl. ¶ 7.  Mr. Maione notes that the Employment Agreement refers to a "forgivable loan" in the amount of $20,000.  See id. Ex. A (Employment Agreement) ¶ 2(c).  From this evidence Plaintiff asks the Court to infer that Defendant Hartmayer executed the Employment Agreement.  Plaintiff explains, "[t]he fact that CGI at the present time is unable to locate an

---

[3]        Current CEO Maione notes only that he "became aware that Mr. Hartmayer entered into an Employment Agreement with CGI on or before June 4, 2002."  See Maione Decl. ¶ 6.

executed copy of the Employment Agreement does not take away from the fact that Mr.
Hartmayer received the $20,000 Loan per that Agreement.  Nor does it suggest that an executed
copy of the Agreement may not be found."  Pl. App. at 14.

In an application for a preliminary injunction, it is Plaintiff who bears the burden to show
likelihood of success on the merits: "'[i]t frequently is observed that a preliminary injunction is
an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear
showing, carries the burden of persuasion.'"  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)
(quoting 11A C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2948,
pp. 129-130 (2d ed. 1995) (footnotes omitted)).  Simply stated, with regard to the existence of the
Employment Agreement, Plaintiff has failed to demonstrate that it is entitled to preliminary
injunctive relief to enforce the restrictive covenant in the Employment Agreement because
Plaintiff has not shown a likelihood of success in proving that it was signed by Defendant
Hartmayer.  While an advance loan may have been made, the tendering of that loan does not
meet the "likelihood of success on the merits" standard required to show the existence of a
signed employment contract with the broad restrictive covenant.

### b. CGI's Code of Business and Ethics

It is undisputed that Defendant Hartmayer executed CGI's Code of Business and Ethics.
The dispute centers on the legal effect of the Code's language.  The "Restrictive Covenant of
Senior Management and Directors" contained in the Code reads as follows:

> The Company regards its business plan and platforms as invaluable assets, and
> much of the information which senior management and directors are provided
> may include trade secrets, which add value to the Company, and enhance
> shareholder equity.  For this reason those employees which the Company
> considers to be in possession of information, technologies, trade secrets and the

8

like, are subject to certain restrictions, and, therefore for a period of one (1) year from separation of employment, no officer, laboratory director, or manager shall accept employment from any other entity which competes directly, or indirectly with the Company, other than purely in the clinical laboratory services business, unless the Company, in writing, waives such restrictions.

Maione Decl. Ex. H (CGI Code of Business and Ethics) ¶ XIV.  The Code's preamble states:

This Code is a statement of goals and expectations for individual and business conduct and is not intended to, and does not in any way constitute an employment contract or assurance of continued employment and does not create any rights in any employee, director, shareholder, or other person or entity.

Id. at 1-2.  The Code concludes with the following "Acknowledgment of Understanding":

I have read and understood [the Code].  I understand that in the performance of my duties I must hold patient, personnel and organizational information in strict confidence.  I recognize that I have a duty to report violations of this statement.  I further understand that violations of this statement are cause for termination of employment, or any agreement or contract with [CGI].

Id. at 9.

Plaintiff cites to several cases to support its argument that the Code creates a valid, enforceable contract between CGI and Defendant Hartmayer.  Plaintiff's argument focuses primarily on the legal issue of whether the Code was supported by sufficient consideration.  See Pl. App. at 16-18.  Significantly, Plaintiff has not found any case in which a court finds an enforceable restrictive covenant in a code of conduct that contains language such as that in the Code's preamble and "Acknowledgment of Understanding."  The issue is not one of consideration.  Rather, the Court must determine whether the plain language of the Code purports to bind Defendant Hartmayer to a restrictive covenant in the way suggested by Plaintiff.

The Code expressly disclaims that it creates a contractual restrictive covenant.  The Court must assume that the parties executed the Code based on the plain meaning of the disclaimer. Cf. Gil v. Related Mgmt. Co., No. 06-2174, 2006 WL 2358574, 5 (D.N.J. Aug. 14, 2006) (stating that in New Jersey '[a]n effective disclaimer must be expressed in language 'such that no one could reasonably have thought [the handbook] was intended to create legally binding obligations' and noting that defendant's effective disclaimer stated that '[n]othing in this handbook shall be construed as a contract of employment'); see also Garcia v. Kankakee County Hous. Auth., 279 F.3d 532, 535-36 (7th Cir. 2002) (discussing employment handbooks that states "[t]his Manual creates no rights, contractual or otherwise, between the Authority, any prospective or current employee, or any other person" and holding that "[d]isclaimers of this kind are enough in Illinois to show that the handbook does not create legal rights"); 19 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 54:12 (4th ed. 1993) ("An explicit and conspicuous disclaimer in an employee personnel manual, stating that no contract rights exist or that the policies in the manual are not intended to create contractual rights, demonstrates the employer's intent that the manual be treated as only a guide for the employee . . . .").  Further, the clause is best understood as a cross-reference to complementary employment contracts with restrictive covenants for certain employees "which the Company considers to be in possession of information, technologies, trade secrets and the like."  See Maione Decl. Ex. H (CGI Code of Business and Ethics) ¶ XIV.  Based on the plain and unambiguous language of the Code, the Court concludes that Plaintiff has failed to show that it is likely to succeed on the merits in its attempt to prove the existence of an enforceable restrictive covenant in the Code.

c. Defendant's Alleged Disclosures and Secret Competition During Employment

10

Plaintiff also alleges several actions that Defendant Hartmayer undertook while still employed by CGI.  See Pl. App. at 9-14.  Plaintiff first alleges that Defendant Hartmayer, while still on CGI's Board of Directors, "disparaged" a CGI product to a potential investor in an October 1, 2007 meeting.  See Pl. App. at 9.  As a result of Defendant Hartmayer's comments, Plaintiff alleges, the individual decided not to invest in CGI.  See id. at 10.  This allegation is denied by Defendant Hartmayer.  Defendant Hartmayer supports his position with an affidavit from the potential investor attesting that CGI's characterization "is not true."  See Hartmayer Br. Ex. D (Affidavit of Andrew Rogal) ("I decided not to invest in CGI because I was only willing to make such an investment under very specific terms and CGI's Board of Directors rejected my written proposal with those terms, which I submitted to CGI before I had ever met Mr. Hartmayer.").  Plaintiff's allegations concerning Defendant Hartmayer's disparagement of CGI products is insufficient to meet the "likelihood of success on the merits" standard for preliminary injunctive relief.

Plaintiff's remaining allegations of "secret competition during employment" are premised on the existence and enforceability of either the Employment Agreement or the Code.  See Pl. App. at 10 ("Numerous other activities violated the restrictive covenants.").  Because the Court concludes that Plaintiff has not met the "likelihood of success on the merits" standard with regard to either the Employment Agreement or the Code, it need not consider these allegations seriatim.[4]

---

[4]     Plaintiff also briefly suggests that Defendant Hartmayer's "secret competition during employment" was in violation of his duty of loyalty.  Plaintiff argues that "Mr. Hartmayer violated the most basic tenets of the Agreements to which he was a party as well as his duty of loyalty to CGI."  Pl. App. at 11.  Plaintiff does not develop its duty of loyalty argument.  In any event, because Defendant Hartmayer is no longer an employee or director of Plaintiff CGI, any

11

2. Irreparable Damage

Plaintiff has also failed to demonstrate that it will be irreparably harmed unless an injunction is issued.  "[I]t is generally understood that all . . . factors must weigh in favor of injunctive relief . . . ."  <u>McKenzie v. Corzine</u>, 934 A.2d 651, 657 (N.J. Super. Ct. App. Div. 2007) (citing <u>S & R Corp. v. Jiffy Lube Int'l, Inc.</u>, 968 F.2d 371, 374 (3d Cir. 1992) ("All four factors should favor preliminary relief before the injunction will issue."); <u>Sherman v. Sherman</u>, 750 A.2d 229, 231 (N.J. Super. Ct. Ch. Div. 1999)).

Attempting to meet its burden, Plaintiff directs the Court to <u>J.H. Renarde, Inc. v. Sims</u>, in which the Court granted Plaintiff's request for an injunction prohibiting Defendants "from acting inconsistently with their restrictive covenants . . . ."  711 A.2d 410, 416 (N.J. Super. Ch. Div. 1998).  In the course of its analysis, the court noted that

> any attempt to quantify such damages would be problematic, not only in determining whether a particular customer who may be served by defendants is one which would have gone to plaintiff's business (but for the unlawful competition) but also because of the difficulty in ascertaining the monetary value of that loss of business.

<u>Id.</u> at 415.

The above-cited language from <u>J.H. Renarde</u> is inapposite to the case at bar for two reasons.  First, and most importantly, in <u>J.H. Renarde</u> the court's analysis was premised on the existence of a valid restrictive covenant.  <u>Id.</u> at 414 ("Plaintiff has demonstrated a reasonable

---

alleged violation of Defendant's duty of loyalty is in the past.  As a result, Plaintiff cannot demonstrate that it is presently suffering or will in the future suffer irreparable damages on this basis.  <u>See, e.g.</u>, <u>Barkley v. Ricci</u>, No. 07-2760, 2007 WL 4440178, *1 (D.N.J. Dec. 17, 2007) ("[t]he relevant inquiry is whether the movant is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued").

probability of success on the merits of its claim that the restrictive covenant is enforceable."). Moreover, Plaintiff in this case has submitted letters to this Court purporting to quantify monetary damages.[5]

### 3. Conclusion

Plaintiff's showing falls short of that required for the "extraordinary remedy" of preliminary injunctive relief.  Consequently, the Court will deny Plaintiff's Application for an Order to Show Cause why a Preliminary Injunction with Temporary Restraints Should not be Entered Against Defendants.[6]

### B. *Defendant's Motion to Dismiss*

### 1. Motion to Dismiss Claims Based on CGI's Code

Defendant Hartmayer first moves to dismiss Plaintiff's claims to the extent that they rely on the enforceability of CGI's Code.  See Brief in Support of Defendant Peter D. Hartmayer's Motion to Dismiss the First Amended Verified Complaint ("Mot.") at 6.  Defendant's argument in this section of his motion to dismiss is substantially the same as his argument in opposition to CGI's application for a preliminary injunction.  See supra Part III.A.1.b.  Defendant Hartmayer

---

[5]        The parties are asked not to argue their case in letter form.  The Federal Rules of Civil Procedure and the local rules of this Court shall be followed for all briefing in this case.

[6]        While this opinion was in draft, Plaintiff sought permission to move for leave to file a Second Amended Verified Complaint.  See DKT#30.  Magistrate Judge Shwartz will entertain Plaintiff's request.  To the extent that Plaintiff's request seeks to supplement its Complaint with allegations to support its Application for temporary restraints and a preliminary injunction, the new allegations and new documents are insufficient to establish either "likelihood of success on the merits" or "irreparable injury."  As a result, Plaintiff's submission does not alter the Court's decision to deny Plaintiff's request for temporary restraints and a preliminary injunction.

argues that "this Court should find, as a matter of law, that the Ethics Code's disclaimer by its terms does not create any legally enforceable rights . . . ."  Mot. at 8.  Defendant Hartmayer again directs the Court to the Code's disclaimer, which reads as follows:

> This Code is a statement of goals and expectations for individual and business conduct and is not intended to, and does not in any way constitute an employment contract or assurance of continued employment and does not create any rights in any employee, director, shareholder, or other person or entity.

Maione Decl. Ex. H. at 1-2.

Plaintiff disputes Defendant's reading of the Code and argues that the above-cited language

> means that the Code <u>itself</u> does not confer any <u>additional</u> rights in the employee. In other words, the code does not confer upon the employee any rights he or she did not already otherwise have.  As such, while the Code itself may not be an employment agreement, the Code sets out the terms and conditions for employment at CGI.

<u>See</u> Plaintiff Cancer Genetics, Inc.'s Memorandum in Opposition to Defendant Peter D. Hartmayer's Motion to Dismiss the First Amended Verified Complaint ("Opp.") at 11.  Plaintiff suggests that the disclaimer language "merely serves to prevent an employee from having an expectation that the Code confers employment rights <u>beyond</u> that of at-will status."  <u>Id.</u> at 10.

The Code's disclaimer provision is not directed solely at disclaiming Defendant Hartmayer's right to employment.  <u>See</u> Opp. at 5.  Rather, the disclaimer is broad, unambiguous, and explicit that its scope extends well beyond the issue of at-will employment.  <u>Cf.</u> <u>Nicosia v. Wakefern Food Corp.</u>, 136 N.J. 401, 412 (1994).  Unlike a more limited disclaimer directed specifically at preserving an at-will employment relationship, CGI's Codes states that it "does not

create <u>any</u> <u>rights</u> in any employee, director, shareholder, or other person or entity."  Maione Decl.

Ex. H. at 1-2 (emphasis added).  The Code is not a contract when it explicitly states that it creates

no such rights in any person or entity.  The Code serves as notice of expected employee conduct.

If an employee had been terminated and sued, CGI might well be able to defend based on the

"grounds for termination" notice in the Code.  But the Code creates no enforceable rights in the

Company to sue for alleged breach of the cross-referenced employment contracts of certain

employees.

The Court will grant Defendant Hartmayer's motion to dismiss Count Twelve in its

entirety and those portions of Counts Seven and Thirteen that rely on the Code as a source of

contractual rights.[7]


2. Motion to Dismiss or Stay all Claims Based on the Employment Agreement

Defendant Hartmayer also moves to dismiss all claims, or alternatively, to stay all claims,

"pending a determination of the validity of the purported June 4, 2002 Employment Agreement."

<u>See</u> Mot. at 8.  If the Employment Agreement is valid, Defendant Hartmayer argues, then

Plaintiff's claims are governed by the Agreement's mandatory arbitration clause.  <u>See</u> Mot. at 8.

Plaintiff disagrees with Defendant's reading of the arbitration clause and suggests that "at least

the claim related to CGI enforcing its trade secrets" is exempt from mandatory arbitration.  <u>See</u>

Opp. at 17.

---

[7]        The Code-based claim in Count Three suffers from the same flaws present in
Counts Seven, Thirteen, and Plaintiff's request for injunctive relief.  Count Three is not dealt
with here, however, because it is discussed more fully in Part III.B.3, below.

The Court need not decide these issues on the motion currently before it and the Court will therefore deny Defendant's motion to dismiss all counts.  The proper way to raise these issues is in a motion to compel arbitration if Plaintiff is later able to establish the existence of an enforceable Employment Agreement.  The parties are advised that arbitration clauses can be enforced even if some claims are not arbitrable.  The practice is to send arbitrable claims to arbitration and either stay or proceed with the remaining claims, at the Court's discretion.  Because of the importance of the Employment Agreement, in this case the Court shall order thirty (30) days of expedited discovery to determine whether there is an enforceable Employment Agreement.  If an executed and enforceable Employment Agreement is found to exist, then either party may move the Court to enforce the Agreement's arbitration clause for those claims that are governed by it.

### 3. Motion to Dismiss Plaintiff's Unfair Competition Claims

Defendant Hartmayer next moves to dismiss Counts One, Three and Five of Plaintiff's Complaint.  Count One alleges unfair competition under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).  See Compl. ¶¶ 88-92.  Count Three alleges common law unfair competition. See id. ¶¶ 97-102.  Count Five alleges unfair competition under N.J. Stat. Ann. § 56:4-1.  See id. ¶¶ 109-15.  All three of Plaintiff's unfair competition claims are premised on statements allegedly made by Defendant Hartmayer to a potential investor, Mr. Rogal, in the course of an October 1, 2007 meeting.  See Compl. ¶¶ 46-48, 89 (Count One), 98 (Count Three), 110 (Count Five).  Plaintiff alleges that "[t]he likelihood of Mr. Rogal's investment of [$2,000,000] in CGI was reasonably probable to occur upon CGI's acceptance of Rogal's proposal, and CGI's

16

expectation of the investment was in accord with that probability." Id. ¶ 46.  Plaintiff alleges that

Mr. Rogal was dissuaded from investing with CGI after Defendant Hartmayer stated that CGI

was "having difficulty manufacturing particular cervical cancer Probes and because said Probes

purportedly 'did not work.'" Id. ¶ 47.

At the outset it should be noted that the elements are the same for all three of Plaintiff's

unfair competition claims.  Consequently, the Court need only undertake a single analysis to

determine whether Plaintiff's claims survive Defendant's motion to dismiss.  See American Tel.

and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1433 (3d Cir. 1994) ("We

previously have held that the 'federal law of unfair competition under § 43(a) is not significantly

different from the New Jersey [common] law of unfair competition' and have applied the

identical test to both claims."); Buying For The Home, LLC v. Humble Abode, LLC, 459 F.

Supp. 2d 310, 317-318 (D.N.J. 2006) ("Because the elements of a claim of unfair competition

under the Lanham Act are the same as for claims of unfair competition and trademark

infringement under New Jersey statutory and common law, the Court's analysis below extends to

Plaintiff's state law claims as well."); J & J Snack Foods, Corp. v. Earthgrains Co., 220 F. Supp.

2d 358, 374 (D.N.J. 2002) ("[T]he elements for a claim for trademark infringement under the

Lanham Act are the same as the elements for a claim of unfair competition under the Lanham

Act and for claims of trademark infringement and unfair competition under New Jersey statutory

and common law . . . ."); Harlem Wizards Entm't Basketball, Inc. v. NBA Props., Inc., 952 F.

Supp. 1084, 1091 (D.N.J. 1997) ("N.J.S.A. § 56:4-1 is the statutory equivalent of Section

43(a)(1) of the Lanham Act").[8]

Plaintiff concedes that its unfair competition claims are brought pursuant to Section

43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  See Opp. at 21 ("Counts 1, 3, and 5

of the Amended Complaint are brought pursuant to Section 43(a)(1)(B) . . . .").  Section

43(a)(1)(B) provides that

> (1) Any person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or device,
> or any combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which . . .
>
>> (B) in commercial advertising or promotion, misrepresents the nature,
>> characteristics, qualities, or geographic origin of his or her or another person's
>> goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is
> likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).  Courts interpreting § 1125(a)(1)(B) have explained that a plaintiff

> must show that "(1) the defendant made false or misleading statements about the
> plaintiff's product [in commercial advertising or promotion]; (2) there is actual
> deception or a tendency to deceive a substantial portion of the intended audience;
> (3) the deception is material in that it is likely to influence purchasing decisions;
> (4) the advertised goods traveled in interstate commerce; and (5) there is a
> likelihood of injury to the plaintiff, e.g., declining sales and loss of good will."

---

[8]        The above-cited authority notwithstanding, Plaintiff briefly suggests, without
further legal analysis, that New Jersey's unfair competition statute differs from the Lanham Act.
See Opp. at 5.  Absent such analysis, Plaintiff has not set forth a basis for differentiating between
its federal, state, and common law unfair competition claims.

M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc., No. 97-1568, 2007 WL 979854, *15

(D.N.J. Mar. 30, 2007) (alterations in original) (citing Highmark, Inc. v. UPMC Health Plan,

Inc., 276 F.3d 160, 171 (3d Cir. 2001)).

Defendant first argues that his alleged statements to Mr. Rogal were not made "in

commercial advertising or promotion."  See Rep. at 10; see also 15 U.S.C. § 1125(a)(1)(B).

> "Courts have adopted the following four part test to determine whether a
> representation constitutes commercial advertising [or promotion]. The contested
> representation must be: (1) commercial speech; (2) by a defendant who is in
> commercial competition with the plaintiff; (3) for the purpose of influencing
> customers to buy defendants' goods or services; and, (4) although representations
> less formal than those made as a part of a classic advertising campaign may
> suffice, they must be disseminated sufficiently to the relevant purchasing public."

M. Eagles Tool Warehouse, Inc., 2007 WL 979854 at *16 (internal quotations omitted) (quoting

Boutique of Short Hills, Inc., v. Fendi USA, Inc., 314 F.3d 48, 56 (2d Cir. 2002)); see also

Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp., 441 F. Supp. 2d 695, 706 n.4 (M.D.

Pa. 2006).

Defendant argues that Plaintiff's Complaint has failed to allege the third element of the

"commercial advertising or promotion" test – that the statement was made "for the purpose of

influencing customers to buy defendants' goods or services."  Courts interpreting this element

have been clear in requiring the involvement of a "customer" or "consumer" as those terms are

generally understood.  See, e.g., Allen Neurosurgical Assocs, Inc. v. Lehigh Valley Health

Network, No. 99-4653, 2001 WL 41143, *8 (E.D. Pa. Jan. 18, 2001) (dismissing Lanham Act

claim in part because the statements at issue were not intended to influence customers; while "the

statements at issue may have been designed to harm [plaintiff] . . .  they were not designed to

attract patients to the [defendant]. Since the services offered by [plaintiff] and the [defendant] are

not fungible, harming the reputation of one does not automatically help the other."); <u>Guardian Life Ins. Co. of America v. American Guardian Life Assur. Co.</u>, No. 95-3997, 1995 WL 723186, *4 (E.D. Pa. Nov. 14, 1995) ("Defendant argues that by sending the letters to the insurance commissioners of various states, Plaintiff, in effect, made the allegedly false statements to 'the most relevant members of the purchasing public.' However, there is no indication that the commissioners themselves were potential insurance purchasers."). Mr. Rogal is alleged to have been an investor, not a customer of either CGI or NDI. <u>See</u> Rep. at 10; <u>see also</u> Compl. ¶ 46. Plaintiff does not cite a single case in which a court has equated "investor" with "customer" for purposes of § 1125(a)(1)(B). Nor does Plaintiff allege that Defendant Hartmayer's statements were made "for the purpose of influencing customers to buy [NDI's] goods or services." In fact, nowhere does Plaintiff even address this element of its unfair competition claim. <u>See</u> Opp. at 23-27. Consequently, the Court finds that Plaintiff has failed to adequately plead that Defendant's statements were made with the "purpose of influencing customers to buy [NDI's] goods or services" as required under the Lanham Act, the New Jersey Code, and common law.

The fourth element of a Lanham Act claim requires a sufficient allegation that the representations were "disseminated sufficiently to the relevant purchasing public." Here, the allegation is that Defendant Hartmayer made the statement to a potential investor. Although <u>Unisource Worldwide, Inc. v. Heller</u>, No. 99-266, 1999 WL 374180 (E.D. Pa. June 9, 1999), establishes that comments allegedly made to commercial suppliers may meet this element, a sole potential investor is not akin to a supplier of goods or services. Plaintiff's failure to adequately plead the fourth element of the "commercial advertising" prong of its "unfair competition" claim

provides an alternative basis for this Court's dismissal of Plaintiff's unfair competition claims in Counts One, Three, and Five.

## IV. CONCLUSION

Plaintiff has failed to carry its burden by demonstrating either a reasonable likelihood of success on the merits or irreparable injury in the absence of injunctive relief.  As a result, the Court will deny Plaintiff's Application for an Order to Show Cause why a Preliminary Injunction with Temporary Restraints Should not be Entered Against Defendants.  With regard to Defendants' Motion to Dismiss, the Court will grant Defendant's motion as to Counts One (Lanham Act claim), Three (common law unfair competition), Five (New Jersey statutory unfair competition claim), and Twelve (breach of contract).  The Court will also grant Defendant's motion to dismiss those parts of Counts Seven (misappropriation of a trade secret), and Thirteen (breach of covenant of good faith and fair dealing) that rely on the enforceability of the restrictive covenant contained in the Code.

## V. ORDER

**ACCORDINGLY**, it is on this 4th day of February, 2008

**ORDERED** that Plaintiff's Application for an Order to Show Cause why a Preliminary Injunction with Temporary Restraints Should not be Entered Against Defendants is **DENIED**; and it is further

**ORDERED** that Defendant Hartmayer's Motion to Dismiss is **GRANTED** as to Counts One, Three, Five, and Twelve in their entirety; and it is further

**ORDERED** that Defendant Hartmayer's Motion to Dismiss is **GRANTED** as to those parts of Counts Seven and Thirteen that rely on CGI's Code of Business Ethics; and it is further

**ORDERED** that the parties shall engage in intensive discovery for thirty (30) days solely as to the question of whether Defendant Hartmayer executed the Employment Agreement and shall file summary judgment motions on that issue no later than March 30, 2008.

/s/ Faith S. Hochberg

**HON. FAITH S. HOCHBERG, U.S.D.J.**